IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-10045
Summary Calender
_____

STACY SOILEAU

Plaintiff-Appellant

v.

SOUTHWEST AIRLINES CO

Defendant-Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 3:99-CV-1138-BC(X)
_____

August 23, 2000

Before KING, Chief Judge, and JONES and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Stacy Soileau ("Soileau") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Southwest Airlines Company ("Southwest"). We AFFIRM.

I.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Soileau is a former flight attendant for Southwest. On December 17, 1997, Soileau called in sick to work. After an investigation, Southwest concluded that Soileau had lied when she called in sick and that she had, in fact, taken a personal trip with no intention of reporting to work that day. As a result, Southwest terminated Soileau's employment on January 23, 1998.

Soileau challenged her dismissal, and filed two grievances with the Southwest Airlines Flight Attendants' Board of Adjustment (the "Board").[1] In the first grievance, Soileau alleged that Southwest breached the collective bargaining agreement by failing to notify her of the disciplinary action within the time frame required by the CBA. The CBA required that Southwest notify Soileau of any disciplinary action within seven days of when it "could reasonably have knowledge of the incident giving rise to the disciplinary action." Soileau argued that Southwest should have had knowledge of her alleged malfeasance the day she called in sick, but that it inexplicably waited until late January to take any disciplinary action.

In her second grievance, Soileau claimed that Southwest had also violated the CBA by refusing to grant her a hearing before the Vice President of In-Flight Services after such a hearing had

_____

[1] Pursuant to the Railway Labor Act ("RLA"), the Board had jurisdiction to hear and resolve Soileau's complaints regarding her termination and Southwest's failure to follow the terms of the Collective Bargaining Agreement ("CBA") negotiated between it and Soileau's union. See 45 U.S.C. § 184.

been properly requested. The CBA states that a disciplined flight attendant "shall be entitled" to a hearing before the Vice President of In-Flight Services prior to any hearing before the Board, "provided such Flight Attendant makes a written request for such a hearing within seven (7) days" of receiving notice of the disciplinary action. Soileau states that her attorney made a timely request for such a hearing, but that Southwest ignored the request and never granted a hearing. Soileau argued that the CBA required that she be exonerated and reinstated as a result of Southwest's failure to follow the CBA's termination and pre-Board hearing procedures.[2]

The Board held an eight-hour hearing regarding Soileau's grievances, during which time it heard arguments and considered evidence from both Soileau and Southwest. The Board subsequently issued a one page decision simply stating that Soileau's grievances were denied. Soileau then filed suit in the United States District Court for the Northern District of Texas, requesting that the court set aside the Board's decision. Although Soileau conceded that judicial review of board of adjustment decisions is extremely limited under the RLA, she nonetheless argued that this case presented one of the limited

---

[2] Under the CBA, if Southwest fails to adhere to the time limits regarding disciplinary actions, "the Flight Attendant shall be considered exonerated and the charges against her/him will be dropped."

3

instances where judicial review was proper.

Specifically, Soileau contended that the Board had so completely misapplied the plain language of the CBA that it had exceeded its jurisdiction, and therefore its decision was subject to judicial review pursuant to the RLA. See 45 U.S.C. § 153 First (q). Soileau also argued that judicial review of the Board's order was proper because her right to due process had been violated by the Board. Soileau's complaint additionally alleged claims of defamation and intentional infliction of emotional distress. The parties agreed to have the case tried before a United States Magistrate Judge, and the case was appropriately transferred. Southwest then moved for summary judgment on all of Soileau's claims. Southwest argued, in part, that the RLA precluded the courts from reviewing the Board's decision. Southwest also contended that because Soileau was afforded the opportunity to fully and completely present her case to the Board, her due process rights were not violated.

In granting Southwest's motion, the magistrate judge noted the "[a]pplication and interpretation of the CBA are within that the Board's authority pursuant to the Railway Labor Act and the CBA," and the Board's determination of whether Southwest complied with the CBA is conclusive upon the parties and the court. The magistrate judge found that Soileau had failed to come forward with any evidence establishing a statutory basis for the court to review the Board's decision. The magistrate judge also rejected

4

Soileau's due process claims, noting that Soileau was allowed to present all her claims to the Board, and that, in any event, Soileau's complaints of "shortcomings" in the Board's termination and grievance procedures were not germane in a due process analysis. Southwest was subsequently awarded costs.

Soileau timely appeals.[3]

## II.

We review a grant of summary judgment de novo, applying the same standards as the court below. See Matagorda County v. Law, 19 F.3d 215, 217 (5th Cir. 1994). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law determines which facts are material, and only a dispute regarding material facts will preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A collective bargaining agreement between an air carrier and its employees is governed by the RLA. See 45 U.S.C. § 181.

---

[3] On appeal, Soileau does not challenge the magistrate judge's decision to grant Southwest summary judgment on her claims of defamation and intentional infliction of emotional distress. Rather, she only appeals the court's refusal to review and set aside the Board's decision. Soileau also argues that the court erred in its assessment of costs.

Pursuant to the RLA, each air carrier must establish a board of adjustment to adjudicate disputes regarding the "interpretation or application of agreements concerning rates of pay, rules, or working conditions."  45 U.S.C. § 184.  Individual air carrier boards of adjustment may exercise the same authority as that exercised by the National Railroad Adjustment Board.  See 45 U.S.C. §§ 153, 184.

The federal courts' ability to review a final decision of a board of adjustment is extremely limited.  By operation of the RLA, courts may only set aside a board's order in three limited circumstances: (1) the failure of a board to comply with the RLA; (2) the failure of a board to confine itself to matters within its jurisdiction; or (3) on a showing of fraud or corruption by the board's members.  See 45 U.S.C. § 153 First (q).  We have recognized that the RLA's limits on judicial review are "among the narrowest known to the law."  Atchison, Topeka, & Santa Fe Ry. Co. v. United Transp. Union, 175 F.3d 355, 357 (5th Cir. 1999) (citing Diamond v. Terminal Ry. Alabama State Docks, 421 F.2d 228, 233 (5th Cir. 1970)).  As Soileau notes, in addition to the statutory grounds, we also have been willing, on a limited basis, to set aside board decisions where the employee can show that she was denied fundamental due process by the board.  See Hall v. Eastern Air Lines, Inc., 511 F.2d 663 (5th Cir. 1975) (finding that the adjustment board's refusal to allow an employee to present an alibi defense to the disciplinary actions brought

6

against him constituted a denial of due process); but see Del Casal v. Eastern Airlines, Inc., 634 F.2d 295 (5th Cir. 1981) (finding that an employee was not denied due process when he alleged, without support, that the adjustment board was not impartial); Wells v. Southern Airways, Inc., 517 F.2d 132 (5th Cir.) decision modified on reh'g 522 F.2d 707 (5th Cir. 1975) (holding that there was no denial of due process when a discharged pilot had a hearing before the adjustment board and was allowed to present his claim that he was fired as a result of hostile discrimination against non-union pilots).

Despite the limited judicial review afforded board of adjustment decisions, Soileau insists that we can properly review the Board's decision in this case. We disagree.

A. Did the Board Exceed its Jurisdiction?

Soileau does not argue that the Board violated the RLA or was influenced by fraud or corruption. Rather, she contends that, because the Board's decision is so irrational and contrary to the CBA, it exceeded its jurisdiction. See 45 U.S.C. § 153 First (q); Brotherhood of R.R. Trainmen v. Central of Georgia Ry. Co., 415 F.2d 403, 412 (5th Cir. 1969). Despite Soileau's arguments, we do not believe that the Board acted beyond its jurisdiction in denying Soileau's grievances.

The Board has the authority to determine whether Southwest acted within the bounds of the CBA, and its findings are

7

conclusive upon the courts. See 45 U.S.C. §§ 153 First (q), 184. Thus, we may not substitute our judgment for that of the Board, and we need not inquire as to whether "substantial evidence" supports the Board's decision. Diamond, 421 F.2d at 233. So long as the Board's decision is "rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement," the Board acted within its jurisdiction. Brotherhood of R.R. Trainmen, 415 F.2d at 412.

Soileau complains that Southwest violated the CBA by not informing her of its disciplinary action in a timely manner. Southwest contends, however, that it complied with the CBA because it notified Soileau of the disciplinary action within seven days of determining that she had lied about being sick, even though it did not determine that she had lied until nearly a month after the incident occurred. We recognize that reasonable persons could disagree about when Southwest could have known of Soileau's behavior. However, this is precisely the type of question that is to be determined by the Board. In this case, we cannot say that the Board's determination in favor of Southwest is so contrary to reason, or the CBA, that the Board exceeded its jurisdiction.

Likewise, we decline to set aside the Board's decision on the basis of Southwest's failure to give Soileau a hearing with the Vice-President of In-Flight Services. As she did before the magistrate judge, Soileau contends that the failure of Southwest

8

to grant her this hearing was a blatant violation of the CBA that mandates her exoneration and reinstatement. Southwest, however, contends that Soileau did not receive a hearing because she failed to make the request personally, but rather made it though a private attorney who was not her recognized union representative. Although Soileau's contention that Southwest has consistently disregarded this provision of the CBA, regardless of who requests the hearing, has some persuasive force, she had the opportunity to present this argument to the Board. The Board nonetheless rejected Soileau's grievances, implicitly finding that Southwest had complied with the CBA. As was the case with Soileau's complaint regarding Southwest's notice of disciplinary action, the determination of whether the Southwest violated the CBA in failing to grant Soileau a hearing before the Vice President of In-Flight Services is a matter left solely to the Board. We cannot say that the Board's decision in favor of Southwest was so irrational or disconnected from the wording and purpose of the CBA to render the decision judicially reviewable under the RLA.

B. Due Process

Turning to Soileau's due process complaint, we find it equally without merit. Initially, Soileau contends that the fact that the Board found against her is indicative of a violation of due process. Beyond this, however, Soileau fails to allege

9

exactly how the Board's proceedings resulted in a denial of due process.  Soileau does not claim that the Board prevented her from putting on her case or presenting her various theories regarding Southwest's alleged violations of the CBA.  In fact, in deposition testimony, Soileau admitted that she was not prevented from presenting any part of her case to the Board.  Rather, Soileau simply contends that the Board's failure to adopt her interpretation of the CBA was a violation of due process.  We are wholly unpersuaded.  The mere fact that the Board rejected Soileau's interpretation of the CBA can in no way be construed as a violation of due process.

Soileau also argues that she was denied due process because the Board only produced a one-page decision denying Soileau's grievances without explanation.  Soileau contends that the Board should have produced a more detailed record of its findings and conclusions.  We have never found that a board of adjustment's failure to produce a detailed record of its proceedings and findings constitutes a denial of due process, and we decline to do so today.  The "bare bones" decision produced in this case does not amount to a denial of due process.

C. Costs

As a final matter, Soileau disputes the amount of costs awarded to Southwest.  Under Federal Rule of Civil Procedure 54(d)(1), the prevailing party in the district court is allowed

to recover costs.  Any objections to the assessed costs must be made by written motion to the district court within five days of the assessment.  See Fed. R. Civ. P. 54(d)(1).  In this case, Soileau failed to file any such motion in the district court. Therefore, she has waived any objection to the assessed costs and we refuse to consider the issue on appeal.  See Prince v. Poulos, 876 F.2d 30, 34 (5th Cir. 1989).

III.

For the above stated reasons, the judgment of the district court is AFFIRMED.[4]

---

[4] Southwest's brief strenuously argues that Soileau's appeal is frivolous and sanctions should be awarded.  While we find Soileau's appeal to be without merit, we decline to find that her appeal is so frivolous as to warrant sanctions.

11