**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AUDRIAN TASTAN,

    Plaintiff - Appellant,

v.

LOS ALAMOS NATIONAL SECURITY,
LLC,

    Defendant - Appellee.

No. 19-2095
(D.C. No. 1:17-CV-00664-JCH-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Audrian Tastan sued her former employer, Los Alamos National Security,

LLC ("LANS"), for disability discrimination and retaliation in violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. We affirm the

district court's grant of summary judgment in favor of LANS, as well as its award of

discovery sanctions and costs.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

LANS manages and operates Los Alamos National Laboratory under a contract with the National Nuclear Security Administration of the United States Department of Energy.  From 2003 to 2017, LANS employed Tastan as an administrative specialist—a position that required her to maintain a "Q"-level national security clearance to access classified information.  Employees in her group are held to the highest standards of honesty and truthfulness because of the nature of their work and their access to classified information.

In February 2017, Tastan resigned from LANS in lieu of termination after an internal investigation revealed she improperly used her security clearance to attempt to access information about her brother, a former contract worker for LANS.  Specifically, without disclosing her relationship to her brother, she asked two employees why her brother's security clearance was terminated.  Tastan pointed out the absence of a policy prohibiting her inquiry, but LANS considered her conduct to be dishonest and deceptive.  Although LANS pointed to this incident to justify its decision, Tastan attributes her termination to her epilepsy, which caused her to experience seizures at work in 2008, 2014, 2015, and 2016.  After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, she sued LANS for disability discrimination and retaliation in violation of the ADA.

To support her discrimination claim, Tastan alleged that LANS subjected her to disparate treatment and failed to make a reasonable accommodation for her epilepsy when she requested a reassignment and a reduced workload.  Tastan requested several

reassignments and schedule changes during the later years of her employment, with varying results. In 2014, she twice requested reassignments to a different unit with a less intense workload, citing personality conflicts with her manager and coworkers; LANS denied those requests. In 2015, she requested a schedule change so she could take her child to school; LANS granted the request, but Tastan reverted back to her original schedule soon thereafter because she sensed tension and animosity with her managers. In 2016, she again requested a reassignment to a different unit, citing poor management personalities and a stressful work environment; LANS granted the request, but Tastan had another personality conflict with her manager.

To support her retaliation claim, Tastan alleged that her supervisors at LANS harassed her after she requested the changes, gave her a negative performance review, denied her reassignment requests, and ultimately terminated her because of her disability.

LANS filed a motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c), asking the district court to dismiss the allegations of a hostile work environment and elevated seizure activity due to that environment because (1) Tastan failed to exhaust her administrative remedies for that claim and (2) the exclusivity provision of the New Mexico Worker's Compensation Act bars that claim. While that motion was pending, LANS moved for summary judgment on the discrimination and retaliation claims under Federal Rule of Civil Procedure 56. In addition, the magistrate judge imposed $10,710.67 in discovery sanctions and awarded $1,771.77 in discovery-related costs after finding that inaccuracies in Tastan's expert disclosures led

3

LANS to incur unnecessary expert fees, attorneys' fees, and court-reporter fees. The district court granted the Rule 56 motion and denied the Rule 12(c) motion as moot.

Tastan now appeals the district court's summary judgment decision and its imposition of sanctions and costs.[1]

## II.    Summary Judgment

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant will not bear the burden of persuasion at trial, it can meet this initial burden "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. It "need not negate the nonmovant's claim." *Id.* We view the evidence in the light most favorable to the nonmovant. *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1276 (10th Cir. 2020).

---

[1] Tastan had counsel before the district court, but she now proceeds pro se. We construe her pro se filings liberally but do not serve as her advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## A.     Discrimination

Tastan's discrimination claim is based on circumstantial evidence, so the district court properly applied the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  The employee must first establish a prima facie case of discrimination, *id.* at 802, by showing "(1) [s]he is disabled (or perceived as disabled) as defined by the ADA, (2) [s]he is qualified to perform the essential functions of [her] job with or without reasonable accommodation, and (3) [s]he suffered discrimination as a result of [her] disability," *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013).  If she does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse action.  *McDonnell Douglas*, 411 U.S. at 802.  An employer's burden to show its reason was legitimate is "exceedingly light."  *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (internal quotation marks omitted).

If the employer makes this showing, the burden shifts back to the employee to show the employer's justification was pretextual.  *McDonnell Douglas*, 411 U.S. at 804-05 & n.18.  To carry this burden, an employee must show the proffered reasons for termination "were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief."  *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (internal quotation marks omitted).  For instance, "[a] plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision."  *DePaula v.*

5

*Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (internal quotation marks omitted).

The district court assumed, without deciding, that Tastan established a prima facie case of disparate treatment discrimination. It then held that the record establishes a legitimate, nondiscriminatory reason for LANS's decision to terminate her employment—namely, deceptive and dishonest workplace misconduct in using her position to inquire about her brother's security clearance. It cited the investigation by LANS's human resources department and the resulting recommendation that LANS should terminate Tastan based on five aggravating factors: (1) her position; (2) her security-clearance level; (3) the finding of dishonest and deceptive behavior; (4) the nature of the information that Tastan accessed as part of her position; and (5) a write-up for dishonest behavior in 2008. It also cited a consistent declaration from Tastan's supervisor. The district court found his evidence satisfied LANS's "exceedingly light" burden to show its reasons were legitimate—shifting the burden back to Tastan.

Tastan argued that these reasons were pretextual because (1) LANS does not have a written policy that prohibits asking about another person's security clearance; (2) LANS did not uniformly discipline employees for misconduct involving honesty and truthfulness, as evidenced by its treatment of eleven other employees; and (3) the timing of the termination suggests it was based on her disability. The district court rejected these arguments. It noted the lack of evidence regarding LANS's treatment of other employees, LANS's awareness of Tastan's seizures, and LANS's policy on retention of employee reprimands. It deemed LANS's investigation to be fair because LANS

6

interviewed five key witnesses, including Tastan herself. It also emphasized that an employee's subjective evaluation of the situation is not relevant to pretext, because courts must examine the facts as they appear to the decisionmaker and defer to an employer's business judgment. The relevant inquiry "isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (alterations and internal quotation marks omitted). After finding that Tastan did not show pretext, the district court granted summary judgment to LANS.

Several of Tastan's appellate arguments reflect a misunderstanding of the district court's application of *McDonnell Douglas* or its procedural rules. For example, she argues that epilepsy *is* a disability covered by the ADA and represents that she would have had a doctor testify to that effect at trial. But the district court assumed she had a covered disability as part of its assumption that she could establish a prima facie case of discrimination, so a finding to this effect would not change the outcome of this case. She also discusses the evidence and witnesses she intended to present at trial to address the lack of evidence noted by the district court. But we must conduct our review of the summary judgment grant from the district court's perspective at the time it ruled, "limiting our review to the materials adequately brought to the attention of the district court by the parties." *Adler*, 144 F.3d at 671. "[W]here the burden to present . . . specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself." *Id.* at 672.

7

Tastan's remaining arguments simply repeat arguments that the district court considered and rejected—that LANS was aware of her epilepsy, that LANS did not uniformly discipline employees for misconduct involving honesty and truthfulness, that the timing of the seizures and her termination supports a finding of pretext, and that LANS should not have considered her 2008 reprimand per company policy. Further, she fails to provide appropriate citations to the record or to legal authorities as Federal Rule of Appellate Procedure 28(a)(8)(A) requires. Despite the liberal construction we afford to plaintiff, we will not comb the record or construct arguments or theories for her. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

Having thoroughly reviewed the parties' briefs, the record, and the applicable law, we affirm for substantially the same reasons articulated in the district court's thorough and well-reasoned decision granting summary judgment to LANS.

## B.    Retaliation

The elements of a retaliation claim are: (1) the employee "engaged in protected opposition to discrimination"; (2) the employee suffered an adverse action during or after his opposition, which a reasonable employee would have found to be materially adverse (meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); and (3) there was "a causal connection . . . between the protected activity and the materially adverse action." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 & n.4 (10th Cir. 2007) (internal quotation marks omitted). The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims. *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 890 (10th Cir. 2018).

8

Tastan alleged that she requested a reassignment and a reduced work load to accommodate her disability, which is a protected activity under the ADA, and that she was harassed and ultimately terminated because of her requests. But the district court granted summary judgment to LANS on two grounds. First, it found that Tastan did not link her reassignment requests to her epilepsy; rather, she cited factors such as a stressful and hostile working environment, personality problems, and poor management personalities.[2] Because the reassignment requests did not constitute a request for accommodation, and because she did not establish the requisite causal connection between those requests and any adverse action, Tastan did not establish a prima facie case of retaliation. Second, even if Tastan could establish a prima facie case of retaliation, the evidence she proffered to show pretext mirrored the inadequate evidence for her failed discrimination claim, so it was insufficient to raise a genuine issue of material fact.

Here too, we affirm for substantially the same reasons articulated in the district court's well-reasoned decision. Tastan's brief summarizes why she thinks she was harassed and treated unfairly. But again, she has not provided appropriate citations to the record or to legal authorities per Federal Rule of Appellate Procedure 28(a)(8)(A), and she appears to be citing new evidence that is not in the record.

---

[2] Similarly, Tastan concedes on appeal that her request for a "temporary deviated work schedule . . . was not due to [her] epilepsy." Aplt. Opening Br. at 7.

## III. Discovery Sanctions and Costs

Finally, Tastan asks us to reverse the district court's award of discovery sanctions and discovery-related costs to LANS. Both awards are outside the scope of our review.

LANS advises in its response brief that Tastan's counsel has already paid the full amount of the discovery sanctions because the magistrate judge held that Tastan and her counsel were jointly and severally liable for them. In any event, we cannot review the sanctions award because Tastan did not object to the underlying magistrate judge's order dated January 31, 2019. "This court has adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005). When a party had counsel before the district court, like Tastan did,[3] the firm waiver rule applies unless "the interests of justice require review." *See id.* (internal quotation marks omitted). This exception is "a narrow one." *Key Energy Res., Inc. v. Merrill (In re Key Energy Res., Inc.)*, 230 F.3d 1197, 1200 (10th Cir. 2000); *see, e.g.*, *Vega v. Suthers*, 195 F.3d 573, 580 (10th Cir. 1999) (noting that "we have excused the failure to file timely objections only in the rare circumstance in which a represented party did not receive a copy of the

---

[3] "[W]e expect counsel to know the pleading rules of the road without being given personal notice of them by the district court." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 n.5 (10th Cir. 2007). The rule governing magistrate judges' recommendations on nondispositive matters provides: "A party may serve and file objections to the order within 14 days after being served with a copy. *A party may not assign as error a defect in the order not timely objected to.*" Fed. R. Civ. P. 72(a) (emphasis added).

magistrate's R&R"). Tastan states that she cannot afford to pay the award and to support her family. Though we sympathize with her situation, this statement alone does not satisfy the interests-of-justice exception. The magistrate judge held a hearing regarding sanctions and issued a detailed order carefully explaining why the sanctions award was appropriate.

Likewise, we cannot review the costs award because Tastan did not object to the district court clerk's August 7, 2019 order setting costs. That order instructed the parties to file any motion for review within seven days, consistent with Federal Rule of Civil Procedure 54(d)(1). "[A] party's failure to file a motion for review of costs with the district court within the [applicable] period constitutes a waiver of the right to challenge the award." *Bloomer v. United Parcel Serv., Inc.*, 337 F.3d 1220, 1221 (10th Cir. 2003) (per curiam) (construing a previous version of Rule 54(d)(1) with a five-day review period).

## IV.  Conclusion

We affirm the district court's judgment. We grant Tastan's motion for leave to proceed in forma pauperis. Only prepayment of fees is excused, not the fees themselves. *See* 28 U.S.C. § 1915(a).

Entered for the Court


Nancy L. Moritz
Circuit Judge

11